## COMMONWEALTH *vs.* ELIZUR WRIGHT.

It is libellous, to publish of one, in his capacity of a juror, that he agreed with another juror, to stake the decision of the amount of damages, to be given in a cause then under their consideration, upon a game of draughts.

It is a general rule of pleading in civil as well as in criminal cases, that, where a charge is brought against a defendant, arising out of the publication of a written instrument, the instrument itself must be set out in the writ or indictment.

An indictment for a libel must not only contain, but it must also profess to set out, the very words of which the alleged libel is composed, that is to say, a transcript of the libellous publication, or of that part of it, which is the subject of the in dictment.

Marks of quotation, used in an indictment for a libel, to distinguish the libellous matter, are not sufficient to indicate that the words thus designated are the very words of the alleged libel.

The words, "according to the purport and effect, and in substance," in an indictment for a libel, do not import that the very words are set out.

The word "tenor," imports an exact copy, and that it is set out in words and figures.

An indictment for a libel alleged, that the defendant published, &c., an unlawful and malicious libel, *according to the purport and effect and in substance, as* follows — the words between *libel* and *as follows* cannot be rejected as surplusage.

THE defendant, who was the editor and one of the publishers of a daily newspaper, called the *Daily Chronotype*, published in the city of Boston, was indicted, tried, and convicted in the municipal court of the said city, for a libel on one Moses Clark, who, at the time of the publication complained of, was serving as a traverse juror in the court of common pleas then sitting in said city.

The indictment was as follows:

The jurors, &c., present, that Elizur Wright, of, &c., being a person regardless of the integrity, purity, and impartiality, which the citizens of this commonwealth, when summoned to serve and serving as jurors in any of the courts of this commonwealth for the administration of justice between party and party, ought to possess and sustain, and unlawfully and maliciously devising and intending to traduce, vilify, and bring into contempt and detestation one Moses Clark, of Boston, aforesaid, who was on the day hereinafter mentioned and for divers days previous had been a traverse juror duly summoned, sworn, and empanelled, at said Boston, to serve, and did on the day hereinafter next mentioned and on divers previous days duly attend and serve as such traverse juror in the court of common pleas for the county of Suffolk, which was begun and holden at Boston on the first Tuesday in April, in the year of our Lord eighteen hundred and forty-seven, and was thence continued by adjournment from day to day, and holden on the day hereinafter next mentioned, in which said court, on the seventh day of May instant, the said Moses Clark, with eleven other jurors, composing the first traverse jury, after being sworn and empanelled according to law to try the case, did return a verdict in an action wherein one Michael Tubbs was plaintiff and one Francis Tukey was defendant, in favor of the said Tubbs, for the sum of three hundred and four dollars and fifty-eight cents damages, and also unlawfully and maliciously intending to insinuate and cause it to be believed, that the said Moses Clark, with another of the said traverse jurors, when considering of the said verdict, in the action

aforesaid, instead of deciding therein according to their duty and to the law and the evidence given to them, as the said traverse jurors were sworn and obliged to do by law, unlawfully, scandalously, and corruptly agreed to decide and did decide the amount of damages which they should render in their said verdict in the action aforesaid by a game of draughts, on the fourteenth day of May, in the year last aforesaid, unlawfully, deliberately, and maliciously did compose, print, and publish in a certain newspaper published in Boston, called the Daily Chronotype, of and concerning the said Moses Clark, and of and concerning his discharge of his said duty as such juror sworn and empanelled as aforesaid, an unlawful and malicious libel, according to the purport and effect, and, in substance, among other things, as follows, that is to say,

" It is said that his " (meaning the said Clark's) " marking against Tukey," (meaning the defendant in the said action) " from which he " (meaning the said Clark) " declared with emphasis he would not budge, was four hundred and ninety-nine dollars and ninety-nine cents, but he did budge from it for this reason " (meaning that the said Clark in considering of the said verdict had declared to the other jurors that he would not consent to a verdict for a less sum than four hundred and ninety-nine dollars and ninety-nine cents, but that he afterwards did consent to a less sum for the reason given in the next sentence of the said unlawful and malicious libel).

" He " (meaning the said Clark) " agreed afterwards with one other juryman " (meaning one other of said jurors sworn and empanelled in said case) " who had marked differently, to stake the decision upon a game of draughts with him " (meaning the said other juryman) — (meaning that the said Clark unlawfully, scandalously, and corruptly agreed with another of the said traverse jurors sworn and empanelled as aforesaid, who differed from said Clark in opinion as to the proper amount of damages to be rendered in the said verdict, to stake the decision of the amount thereof upon a game of draughts.)

"It was so staked and the game going against Clark he was obliged to concur with a lower marking" (meaning that the said Clark and another of the said traverse jurors, while considering of their verdict in the said action, played a game of draughts for the unlawful, scandalous, and corrupt purpose of deciding thereby what amount they should return in the said action, and that the said Clark having lost the said game accordingly and unlawfully, scandalously, and corruptly concurred in a verdict so decided).

"After the matter was arranged" (meaning after the aforesaid unlawful, scandalous, and corrupt agreement charged as aforesaid) "in a trial which decided nothing, he" (meaning the said Clark) "marked down his one cent" (meaning that the said Clark voted for a verdict of one cent damages in the said action) "where in the opinion of the community generally we believe the verdict ought to have been" (meaning that the said Clark originally voted for a verdict in the said action for a sum as damages greatly disproportionate to the justice and merits of the said action and afterwards by an unlawful, scandalous, and corrupt agreement with another juror voted for one cent damages and so trifled and sported with his duty as a juror and was guilty of a misdemeanor), to the great injury, scandal, and disgrace of the said Moses Clark, and against the peace, &c.

The defendant moved in arrest of judgment:

*First,* because the publication set forth in the indictment does not contain any libellous or indictable matter;

*Second,* because the publication does not contain any such libel as is charged in the indictment;

*Third,* because the indictment does not profess to set forth the very words or tenor of the alleged libel, but only the purport, effect, and substance thereof; and,

*Fourth,* because the indictment is, in other respects, uncertain, informal, and insufficient in law.

The presiding judge of the municipal court overruled this motion, and the defendant thereupon brought his case to this court by exceptions.

The case was argued, on the part of the defendant, by

*R. Hildreth,* as to the first and second grounds of the motion in arrest, and by *H. E. Smith,* as to the third.

*Hildreth.* The party alleged to be libelled was at the time serving as a juror, and the publication referred to him as such and not in his private character. The defendant was the publisher of a newspaper. There is nothing, therefore, in the case, which should induce the court to disregard technical objections. The prosecutor was *quasi* a public man; the defendant was in the performance of a duty to the public; and, in this country, it is not held to be an aggravation of a libellous publication, that the subject of it is a public character. Newspapers are no longer considered as nuisances; but as a necessary article of life; the daily bread of the public. Editors are often obliged to act upon slight evidence; to get up their publications with great haste; and they are surrounded by exciting causes. In the performance of their duty to the public, they are therefore entitled to some indulgence; and the law ought not to be so strict with reference to their publications, as in regard to those which have no public purpose in view. Prosecutions for libel against editors ought not to be encouraged.

1. The publication complained of is not a libel. What is a libel? It is something published, which tends to blacken or defame a man's character, and to make him an object of hatred or contempt; and, in order to do this, the publication must contain a serious and substantial charge, and not merely one of a light and frivolous description. There is nothing in this publication, which can by any possibility be deemed libellous, unless it be that part of it, which charges the prosecutor with entering into an agreement with one of his fellows, to decide upon their verdict by a game of chance. But, by the agreement, as stated, the two jurors only undertook to settle *the amount of damages,* and not *the verdict,* by means of a game of chance. If it had been the latter, the statement might have been libellous. The jury had agreed upon a verdict for the plaintiff, and the only point then before them was as to the amount of damages. They had to decide,

whether they should agree upon the amount, or disagree and be discharged from giving a verdict.

2. The publication was not what it is set forth to be in the indictment. The latter alleges, that the defendant charged the prosecutor with acting corruptly. But the charge itself does not import any thing of a corrupt nature. The conduct of the prosecutor, as stated in the publication, might be improper or even unlawful, but it was not in any sense corrupt. If, then, the indictment allege a charge of corruption, and the publication, as stated, import no such charge, this is a repugnant and defective statement, and a sufficient ground for arresting the judgment.

*Smith.* The *third* ground of exception is, that the indictment does not profess to set forth the very words or tenor of the alleged libel, but only its purport, effect, and substance. The indictment professes to set out only a part of the libel, namely, the substance of it. The terms employed, — " according to the purport and effect, and in substance, among other things, as follows, that is to say," — indicate only that the substance of the libel is set out. The terms " purport and effect " do not add to, or mean any thing more than, the word " substance," which is used in connection with them. *Purport* and *effect* import *substance.* 1 Chitty C. L. 234; Archbold C. P. 44; Wharton Am. Crim. Law, 83, 84. We contend, 1st, that the indictment should set out the libel in the very words of which it is alleged to be composed; 2, that it should profess to do so; and, 3, that it should set out the whole of those words.

1. The language of a libel must be set out in the indictment in the very words of the publication. Archbold C. P. 42; Wharton Am. C. L. 83; *Zenobio* v. *Axtell,* 6 T. R. 63 (as to the mode of setting out a libel published in a foreign language); *State* v. *Stevens,* Wright, (Ohio,) 73; *State* v. *Gustins,* 2 Southard, 744; *Commonwealth* v. *Sweeney,* 10 S. & R. 173; *Wright* v. *Clements,* 3 Barn. & Ald. 503; *King* v. *Beer,* 12 Mod. 219; *State* v. *Parker,* II. Chipman, 298; Starkie on Slander, 323.

2. The very words must not only be set out, but the indictment must profess to set them out. 1 Starkie on Slander, 323; 1 Chitty C. L. 234; Wharton Am. Crim. L. 83; 3 B. & A. 506. For this purpose, certain forms of expression, indicating that the words are so set out, must be used, as, for example, "of the tenor following," — "as follows," — "containing," — "in the words and figures following," &c.

3. These rules ought to be applied with more strictness, where the indictment does not profess to set out the whole of the publication, but only that part of it, which the prosecuting officer considers as libellous. He is doubtless at liberty to select and set out in the indictment those portions which he charges as libellous, without inserting the residue of the publication. But, if, in addition to this, he were allowed to set out only a part, that is to say, the substance, of those portions, the defendant would be under great difficulty in knowing what he was charged with.

It is exceedingly clear, from the English authorities, and from cases decided in other states, that the indictment must profess to set out the alleged libellous matter, and must set it out in the very words. It was argued in the municipal court, that the words, "according to the purport and effect, and, in substance, among other things," might be rejected as surplusage, and then the indictment would profess to set out, and would in fact set out the very words. But this would be to make a new indictment. In *Wright* v. *Clements*, 3 Barn. & Ald. 503, Abbott, C. J., says, the words "in substance" give a different meaning.

It seemed to be admitted, on the argument in the court below, that the indictment was bad, according to the English authorities. But it was said, that a practice had become established, in this commonwealth, which was sanctioned by the forms in Davis's Precedents, 125, 154, to state a libel according to the substance and effect. Mr. Davis refers to East P. C. 975, as his authority; but the rule there laid down, which was with reference to indictments for forgery, is directly the other way. In *Commonwealth* v. *Houghton*

8 Mass. 107, Mr. Davis referred to his own practice as authority, but the court disregarded it; and in *Moore* v. *Commonwealth,* 6 Met. 243, the authority of one of his precedents was directly set aside.

The case of the *Commonwealth* v. *Parmenter,* 5 Pick. 279, was also relied on as sanctioning the doctrine, contended for on the other side. In this case, the court say, that as the statement of the note alleged to be forged is according to the purport and effect, there is no material variance between *promised* and *promise.* But the point now presented was not raised, and that case therefore cannot be considered as decisive of the present.

Another point, which was taken in the court below, was, that marks of quotation performed the office of a recital, — upon what authority was not stated; but unless inverted commas perform a higher function than that of a recital, the argument is of no avail.

It was argued, also, that the practice in this commonwealth, which had prevailed for a long time, to describe written instruments, according to their purport and effect and in substance, ought not now to be questioned. This argument is answered by the remarks of Chipman, C. J., in the case of *State* v. *Parker,* 1 D. Chipman, 298, which was an indictment for uttering and giving in payment a counterfeit bank note ; the instrument was not set out in words and figures ; this being objected to, the form was admitted to be bad, according to the common law ; but it was attempted to be sustained on the ground, " that indictments for forgery had been so drawn in Vermont, for more than thirty years, and that not one had been quashed, or held bad on demurrer for this exception ; " but the court, notwithstanding the long usage, which was admitted to have prevailed, though not universally, sustained the exception, and adjudged the indictment to be bad.

In order to sustain this indictment, the court must decide one of two things, namely : either that it is not necessary, in an indictment for a libel, to set out the words, but only

5 *

the substance ; or that the terms *purport* and *effect* import that the very words are set out. If the latter, the court ought also, at the same time, to decide that the word *tenor* in a recital imports that the *substance* only is given ; otherwise, all distinctions will be confounded.

In conclusion, we contend that it is clear, both upon reason and authority, that in an indictment for a libel the very words of the alleged libel must be set out, — that the indictment must profess to set them out, — and that certain technical words, which have acquired a settled meaning, must be used to signify whether the very words are set out, or whether their substance only is contained in the indictment. The contrary practice has not prevailed long enough, or been so extensive, as to have become the common law of this commonwealth.

*S. D. Parker*, (county attorney,) for the commonwealth.

It is not true, as was urged by one of the counsel for the defendant, that prosecutions for libel ought to be discouraged. The reputation of the citizens is as much entitled to the protection of the law as their persons. The punishing of libels by law is no doubt the frequent cause of preventing bloodshed, which would be likely, here as well as elsewhere, to ensue, if the party injured by the publication of a libel had no means of redress by resorting to the law. It was lately argued by counsel in one of the inland counties,* that, in this commonwealth, libels were not legally punishable ; and so argued the defendant, in the present case, who had no counsel, on his trial in the municipal court. The decision in the case alluded to has not yet been pronounced, but there can be no reasonable ground for doubting what it will be. Libels are undoubtedly punishable by law in this commonwealth, and so are likely to remain ; at least, until the law is changed by the legislature. Editors are not licensed slanderers ; they as well as others are amenable to criminal prosecution, if what they publish is injurious to the reputation of the citizens ;

---

* Allusion is here made to the case of the *Commonwealth* v. *Chapman* (13 Met.), in Franklin, decided at Northampton, September term, 1848.

and it is to be hoped, that they will become more sensible of the duties incumbent upon them, in this respect, than the counsel of the defendant seems to be. Instead of being less on their guard than others, as suggested by the counsel, editors should be much more so; inasmuch as newspapers have a wider circulation than libellous productions in any other form. Haste is no justification; and, if it were, there is no pretence for it in the present case; the article complained of was the last of a series, and was the result of deliberation.

In the argument for the defendant, the authority of the late solicitor-general Davis, a most eminent lawyer, and an extremely able and successful prosecuting officer, was called in question. His Precedents, however, are exceedingly valuable; they give the law as it existed when they were compiled; and, if the law has since changed, it is not his fault. The revision of the statutes introduced many changes in the criminal law, and some corresponding alterations became necessary in the forms of indictments. But two cases, however, have been referred to, in which Mr. Davis's forms have been found to be defective and overruled; one of which is the case of *Moore* v. *Commonwealth,* 6 Met. 243, which was an indictment for adultery; and the other that of the *Commonwealth* v. *Houghton,* 8 Mass. 107, which was an indictment against the defendant for having counterfeit bills in his possession, with intent to pass the same as genuine. The indictment, in the present case, was copied from No. 220. If the objection taken is valid this precedent must also be overruled. The ground, upon which the form of pleading objected to was adopted by Mr. Davis, is stated by him, in a note to his first precedent for forgery, (p. 125, n. 1,) in which the forged instrument is described as " of the purport and effect following; " and, in a note appended to this passage, he says: " This is the most proper allegation, as to the mode of describing the forged instrument. It is neither necessary nor advisable to allege it in the ' tenor following.' See 2 East P. C. 975, §§ 53, 54." The passage referred to in East is as follows: " It is essentially necessary, to an indictment for forgery, that the instrument alleged to be

forged should be set forth in words and figures ; though there be no technical form of words, for expressing that it is so set forth." In a note to the same words in another indictment, also for forgery, Mr. Davis remarks : " This mode of alleging the purport of the instrument is equally valid, and more advisable than to allege it in the ' tenor,' in which case, the slightest mistake is fatal." He probably thought that the minute verbal accuracy required in the proof, where the word " tenor " was used, was not equally necessary where the statement was introduced by the words " purport and effect," or other equivalent words; although it was necessary, that the alleged forged instrument should be set forth in words and figures ; and, that, on the authority of the doctrine stated by East, the risk attending the use of the word " tenor " might be avoided ; because, although the instrument must indeed be set out in words and figures, yet no technical words were necessary to convey the idea that it was so set forth.

The *first* objection, urged by the defendant's counsel, is matter of substance ; the *second* relates to a supposed variance ; the *third* is a question of mere form.

1. It is first said, that the publication is not libellous. But it is clear, from the language, that it imports a charge of corruption in the prosecutor, in deciding the case before him, as a juror, upon or by reason of an unworthy motive ; and such a charge is clearly libellous, according to the most approved definitions of the offence of libel. That given by Mr. Hamilton, in his argument in the case of *The People* v. *Croswell*, 3 Johns. C. 354, is the briefest and most comprehensive : " A libel is a censorious or ridiculing writing, picture, or sign, made with a mischievous and malicious intent towards government, magistrates, or individuals." In *Clark* v. *Binney*, 2 Pick. 113, Lincoln, J., in stating the opinion of the court, refers with strong approbation to the definition of libel given by Parsons, C. J., in the case of *Commonwealth* v. *Clapp*, 4 Mass. 168 : " It is a malicious publication expressed either in printing or writing, or by signs, or pictures, tending either to blacken the memory of one dead, or the

Commonwealth *v.* Wright. .

reputation of one who is alive, and expose him to public hatred, contempt, or ridicule."

2. The second objection is, that there is a variance between the publication, and the averments in the indictment; that the publication itself is innocent, though the averments make it criminal. Questions of variance are mixed questions of law and fact, to be decided by the jury under the instruction of the court. The motion now is, not to set aside the verdict, but to arrest the judgment. The jury have found the facts as set out by means of the innuendoes; and no question of variance can arise, but upon a motion for a new trial, on the ground of a misdirection. No question is made but upon the record alone. The answer to this second objection is, that the publication is as libellous, as the averments in the indict-. ment make it; but, if it were otherwise, the jury in the court below have already passed upon it, under the instruction of the court, and there is no motion to set aside the verdict, on the ground of misdirection. The publication must now be taken to be what the indictment says it is.

3. The third objection is one of mere form. The exception declares that the indictment is bad, because it does more than it professes to do; and the judgment is asked to be arrested, because the indictment does not profess to do what it in fact does.* Is the indictment defective in point of form? The motion is, that the judgment be arrested, because the indictment only professes to set out the substance of the libel. The indictment does, in fact, set out the libel in the

---

* Before proceeding to consider this objection, Mr. Parker observed, that he had drawn all the indictments, amounting to several thousands in number, which had been returned by the grand juries for the county of Suffolk, since he had been appointed to office, with the single exception of the indictment in this case. The complaint, in this instance, was made to the grand jury, just at the close of their business for the term, and the indictment was prepared by the prosecutor's counsel, an eminent member of the bar in this county. Being drawn according to the precedent in Davis's Precedents, No. 220, p. 161, which had been before followed by him in very many important cases, without being objected to, he had adopted the indictment, and presented it to the grand jury as his own.

words of the publication.  But this is not the exception.
The defect complained of is, that the indictment does not
profess to set out the words.  It does, however, profess to set
out the very words.  That this is the case, is apparent, *first,*
from the marks of quotation; *second,* from the innuendoes;
and, *third,* from the use of the word " purport."

I.  The marks of quotation show, that the publication is set
out in the very words.  All writings conform to certain rules;
and the words, figures, and marks, of which they are com-
posed, are read by the eye.  Punctuation is a part of lan-
guage, if any thing which does not consist of words can be
so, because it affects, and, indeed, sometimes fixes, the
meaning of a sentence.  Thus, for example, in this phrase,
*— the Lord is gracious never willing the destruction of men,*
— the sense is one way, if the comma is placed before, and
quite different, if placed after, the word *never.*  All the
marks of punctuation thus are or may be signs of ideas, and
consequently are a part of the written language.  Whatever
indicates meaning conveys ideas to the mind.  Marks of
quotation, which are among the signs used in punctuation,
and therefore indicative of ideas, denote that the words thus
distinguished are quoted, that is, that the language *professes,*
which is all that is wanted in this case, to be taken from
some other source.  They profess to mark language, which
is transferred, *ipsissimis verbis,* from something else.  *Pur-
port* is that which is apparent to every eye.  When it is said,
that such is the purport of a thing, we understand that so it
appears to every eye to be.  In like manner, inverted commas
indicate to every eye that what they contain is quoted.  In
the case of *Wright* v. *Clements,* 3 Barn. & Ald. 503, decided
in 1820, and in that of *Commonwealth* v. *Sweeny,* 10 Serg.
& R. 173, decided in 1823, which are the principal authori-
ties relied on by the defendant, the word *substance* only is
used.  But, in the present, the word *purport* also is em-
ployed; and there is a distinction between substance and
purport.  The latter addresses itself partly to the sight ; the
former to the mind only.  Purport denotes what is apparent to

every eye. Marks of quotation are apparent to every eye, and indicate that the words so distinguished are taken from some other source. When, therefore, the statement of the libel is introduced by the word *purport*, and accompanied with marks of quotation, if it be true, as laid down by East, that no technical form of words is necessary to show that the instrument is set out in words and figures, — how can it be said, that this indictment does not profess to set out the very words of the libel?

II. The innuendoes, quoting the words of the publication, and then explaining them, show that the very words are given; and that the language and not the substance is intended to be given. This is the very purpose of an innuendo; the language being inserted, as it exists, and then explained by the innuendo in its legal sense.

III. The word *purport* shows, that the indictment under· takes to set out the very words. But it is said, that *tenor* is the necessary word; and if that were only in the indictment, it would be sufficient. The earliest case, which is referred to as authority for this nicety in the use of language, is that of *The King* v. *Beare*, 1 Ld. Raym. 414; reported also in Carthew, 407; Holt, 422; and 3 Salkeld, 226. In that case, it was held, that tenor imports an exact copy, on the authority, in part, of the Register of Writs, 169 (a); in which, 169 (b), the word *tenor* is used as synonymous with *transcriptum.* The position, taken on the part of the commonwealth, is, hat tenor and purport mean the same thing. There are ιhree sources, from which the meaning of words and phrases, in legal terminology, may be ascertained, — lexicographers, text writers, and judicial decisions.

Among lexicographers, it will be sufficient to refer to two only. The word *tenor* is both Latin and English. In the former language, it is thus defined by Facciolati: — " accent, — tone; — among jurisconsults, *tenor legis* is the meaning or purport of a law." Webster defines it as — " sense contained; purport; substance; general course or drift." From the lexicographers, therefore, it appears, that tenor and purport are equivalent terms.

Among the text writers, Chitty defines purport to be "the substance of an instrument, as it appears to every eye." 1 Chitty C. L. 214. If this be true, purport means the same as tenor. Archbold says, that purport is that which appears on the face. Archbold C. P. 20. The same definition is given in 2 East P. C. 980. Can tenor mean any thing more ? From the text writers, therefore, as well as the lexicographers, it is clear, that purport is as effectual as tenor.

Judicial decisions may also be resorted to for the use and meaning of words. In *Commonwealth* v. *Parmenter*, 5 Pick. 279, which was an indictment for forgery of a promissory note, described as of "the purport and effect following," the court held, that, as the note was set out according to its purport and effect, and not according to its tenor, the variance between *promised* and *promise* was not material. If the word tenor was not material in this case, it cannot be so in the case at bar. In *Nye* v. *Otis*, 8 Mass. 122, which was an action of slander, setting out the substance was held sufficient. In *Commonwealth* v. *Carey*, 2 Pick. 47, which was an indictment for uttering a counterfeit bank note, the instrument was described as of the "following purport and effect;" in *Commonwealth* v. *Ward*, 2 Mass. 397, the defendant was indicted for forging and uttering a promissory note, "purporting" to be the note of one J. E. ; and in *Commonwealth* v. *Boynton*, 2 Mass. 77, the indictment was for uttering, &c., as true, &c., "in substance and of the purport and effect following ; " and, in none of these cases, was any objection made that the word tenor was not used, or that the statement of the instrument was insufficient. In *Downing* v. *State of Missouri*, 4 Miss. 573, it was held, that, when an indictment undertakes to describe an instrument according to its purport, it must describe it in the words of which it is composed, that is, as it exists, and not merely according to its legal effect. In that case, which was an indictment for circulating a note contrary to law, the note was described as payable to the *holder;* the note offered in evidence was payable to *bearer;* the court considered this as a fatal

variance, although it was admitted that the legal effect of the note, as it was set out, and as it was proved, was the same.

Upon these grounds, it seems clear, that the word purport is sufficient, and that the word tenor is not necessary. Some duties must be supposed to have been discharged by the court, before which the trial took place; and if there had been a variance, it would have been seen and pointed out, and would have been fatal. Something also may properly be presumed after a verdict. In 2 Dane's Abridgment, 587, it is said, that "there are two ways of describing a libel, one by the words, and the other by the sense."

*Hildreth*, in reply. The attorney for the commonwealth has not taken any notice of the distinction between deciding *a verdict*, and deciding the *amount of damages* merely, by a game of chance or skill. What was said by the defendant does not charge corruption; it imports an indecorum, perhaps, but nothing immoral.

The second ground of exception is treated by the attorney as a variance; but it is not of that character; it is an incongruity apparent on the record. As to the third ground of exception, the only case cited for the commonwealth, in opposition to the numerous English and American cases, relied upon by the defendant, is that of *Downing* v. *State of Missouri*, 4 Miss. 575; upon the authority of which, the court will hardly be inclined to set aside the former. Marks of quotation do not always indicate the very words. There are many passages in Bancroft's History, for example, in which, although distinguished by marks of quotation, many of the words of the authors referred to are omitted. The only case cited from the reports of this court, which is at all applicable, is that of *Commonwealth* v. *Parmenter*, 5 Pick. 279. But in that case, the point now in issue was not made. Besides, there is a distinction between forgery and libel. In the latter, the offence consists in the very words; which, consequently, the defendant is entitled to have set out to him.

FORBES, J. The first objection is, that the indictment on which the defendant is convicted, does not contain any libellous, or indictable matter.

We think that this objection cannot be sustained. The matter contained in this publication is, clearly, libellous. The tendency of the publication was to degrade the prosecutor in the esteem and opinion of the world; it impeached his integrity as a juror, and must, if the charge which it contains were true, make him an object of distrust and contempt among men. It was open to the defendant, in justification, to prove the truth of the charge, and that it was published with good motives, and for justifiable ends. But assuming, as we must do, at this stage of the case, that the publication was false and malicious, the record discloses, not merely an indictable offence, but an offence which the peace and well-being of society require to be repressed by exem plary punishment.

It was, however, contended in the argument for the de fendant, that as the transaction set forth in the publication took place after the jury had agreed to return a verdict for the plaintiff, and as it related merely to the manner of assessing the damages, the publication ought not to be held to be libellous. The counsel for the defendant seemed to concede that to charge a juror with having returned a verdict in the manner stated in the publication would be libellous, but he insisted upon a distinction between a charge which related to the finding of a verdict, and a charge which related to the manner of assessing the damages. We do not perceive that any such distinction can exist. There was but one issue, it is true, and perhaps the amount of damages is not technically a part of the issue, but an agreement to return a verdict for the plaintiff was not a discharge of their whole duty by the jury. Their duty was twofold; they were first to find the issue, and then to assess the damages. The oath of a juror is designed to protect all those interests upon which it is competent for a jury to decide The obligation of the oath is not divisible; it cannot be restricted to a particular subject of inquiry, in the manner supposed by this objection.

Another objection to the indictment is, that it does not profess to set forth the very words or tenor of the alleged libel, but only the purport, effect, and substance thereof.

It is a general rule of pleading, in civil as well as in criminal cases, that when a charge is brought against a defendant arising out of the publication of a written instrument, the instrument itself must be set out in the writ or indictment. *Wright* v. *Clements*, 3 Barn. & Ald. 508. The court are of opinion that this rule is applicable to the present case, and that it is essential to the validity of the indictment, that it should set forth the words of the libel. The correctness and applicability of the rule were not denied on the part of the government, but it was insisted that in drawing this indictment, the rule had been substantially complied with. Upon this part of the case, two questions were discussed at the bar : first, whether it is necessary that the indictment should profess to set out the very words of the publication ; secondly, whether the word *purport* and the marks of quotation used in the indictment do import that the very words of the publication are set forth therein.

The objection was said to be merely technical, and the court were invited to disregard it, especially as it was admitted that the words of the publication are recited correctly in this indictment. But whatever the character of the rule may be, if well established, it is clearly the duty of the court to enforce it, and the defendant may as effectually avail himself of this, as of a more meritorious defence.

The strictness required in criminal pleading has been occasionally the subject of criticism and complaint; with this the court have nothing to do : they are bound to administer the law as they find it. If this strictness has a tendency to impede or to thwart the course of justice in criminal proceedings, it is the province of the legislature, and not of the court, to amend the law.

Upon a comparison of the authorities cited at the argument, the court are satisfied, that (with one or two exceptions having no relation to the present case) the indictment

must not only contain, but it must also profess to set out, a transcript of that part of the libel upon which the pleader relies.    The authorities ˴ upon this point are somewhat numerous : the English and some of the American cases are referred to 1 Chitty C. L. 238, and note.

The counsel for the government contended, that for a series of years the practice in this commonwealth had been different, and that this practice is warranted by the authority of the late solicitor-general Davis (Precedents of Indictments, 125, n. 1,) and the case of *Commonwealth* v. *Parmenter*, 5 Pick. 279.

The note in Davis's Precedents does not appear to be supported by the authority to which he refers; and the case of *Commonwealth* v. *Parmenter* was evidently decided without much consideration ; the correctness of the practice, it is true, seems to have been taken for granted, but the precise question here raised does not appear to have been suggested to the court, and the verdict in that case could not have been sustained for other reasons, which were assigned and relied upon by the court, in setting the verdict aside.

Under these circumstances, we think that that case ought not to control the uniform current of the English decisions, supported by respectable American authorities.

It was further contended, that it did sufficiently appear on the face of this indictment, that the words of the libel were set forth, inasmuch as they were included between marks of quotation.    We have not thought it material to ascertain whether or not this is so in the original indictment ; in the copy which has been furnished to the court, the marks of quotation include both the words of the innuendoes and the words of the publication.    In manuscripts as well as in printed books, it is undoubtedly a ˙ common practice to indicate the language borrowed from another, by the use of inverted commas ; but we are far from being certain, that these marks are generally understood to import a perfect accuracy of quotation.    A writer, anxious to escape the charge of plagiarism, would be likely to use these marks, although he appropriated nothing more than the sentiment.

and substantially the language of his author, without aiming at verbal accuracy. Besides, if these marks should be held sufficient to sustain an indictment, they must also be held sufficient to defeat it, whenever a slight mistake is made in the use of them ; and the accidental omission to include a single word of the libel in inverted commas, or the including within them of a word which was not in the libel, would be a fatal variance. It sometimes happens that the change of a single comma will give an entirely different meaning to a sentence : suppose a pleader to have occasion to set out a sentence of this description, would the misplacing or the omission of a comma, thereby leaving the meaning equivocal, be fatal to the indictment ? Had we the power to do it, we should doubt the expediency of introducing a new rule in pleading, the probable effect of which would be, to throw additional embarrassments in the way of the pleader, and to increase the chance of escape, by means of merely clerical mistakes or technical errors.

The practice in arraignments is to read the indictment to the prisoner, and then to receive his plea. His knowledge of the charge against him is derived, ordinarily, from hearing the indictment read, and not from the inspection of it. But these indications of the meaning of the pleader are addressed to the eye : they are not perceptible by the ear ; and if the rule of construction contended for be correct, this well established practice is clearly wrong.

It was also contended that the word " purport," used in the indictment, is equivalent to tenor, and imports a strict recital of the words of the libel. But in our view this is not. necessarily, the import of the term. The purport of a message or communication may be, and indeed generally is, stated, without the use of the identical words in which it is conceived. It is equivalent to substance, and such was its construction, by the court, in the case of the *Commonwealth* v. *Parmenter*, before cited.

" The word *tenor* imports an exact copy, — that it is set forth in the words and figures, — whereas the word *purport*

6 *

means only the substance or general import of the instru-
ment." 2 Gabbett Cr. Law, 201.

The court are of opinion that this indictment is defective,
and that judgment must be arrested.

NOTE. Mr. Davis's Precedents being a book of practice in very general use,
it seems desirable to point out those forms in it, which are affected by the
decision in this case. The following contain the objectionable words: Nos. 99,
and 100, under the head of *Challenging to Fight*, (which are adopted with
modifications from 3 Chitty C. L. 848, 852); Nos. 152, 153, 154, 155, 156, 157,
158, 159, 160, 170, 171, 172, 173, under the head of *Forgery and Counterfeiting*,
all of which were drawn by Mr. Davis, and No. 169, under the same head,
which was taken from the Crown C. C. (6th Ed.) 360; Nos. 209, (3 Chitty
C. L. 889,) 212, (3 Chitty, 887,) 214, (3 Chitty, 911,) 215, (3 Chitty, 914,)
217, (Crown Cir. Ass. 73,) 218, (3 Chitty, 889,) 219, (Archbold, C. P. 501;
2 Chitty 14,) 220, under the head of *Libel*. In several of the many forms,
which appear to have been adopted by the author from English precedents,
the usual and apt words, such as " tenor," &c., are struck out, and the words
"purport," " effect," " substance," inserted. This is the case in Nos. 169,
209, 212, 214, 215, 217, 218, 219, 220, which have been examined. It is
remarkable, however, that the forms of indictment, for challenging, Nos. 104 and
107, and for libel, Nos. 210 and 211, in which the alteration seems equally
proper, retain the apt and technical words of recital.